AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

**FILED**

MAY 12 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Search of

INFORMATION ASSOCIATED WITH
chiefjayjay THAT IS STORED AT PREMISES
CONTROLLED BY INSTAGRAM, LLC.

Case No.    4:21 MJ 5142 NAB

SIGNED AND SUBMITTED TO THE COURT FOR
FILING BY RELIABLE ELECTRONIC MEANS

## APPLICATION FOR A SEARCH WARRANT

I, __James Gaddy_____, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

INFORMATION ASSOCIATED WITH chiefjayjay THAT IS STORED AT PREMISES CONTROLLED BY INSTAGRAM, LLC., more fully described in Attachment A.

located in the _____NORTHERN_____ District of _____CALIFORNIA_____ , there is now concealed

### SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., 841, 846 | controlled substance offenses, firearms offenses |
| Title 18, U.S.C., 924(c)(j) | |

The application is based on these facts:

### SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under penalty of perjury that the foregoing is true and correct.

*Applicant's signature*

James Gaddy, Task Force Officer, DEA

*Printed name and title*

Sworn, to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: ___5/12/2021___

*Judge's signature*

City and state: St. Louis, MO

Honorable Nannette A. Baker, U.S. Magistrate Judge

*Printed name and title*

AUSA:   John R. Mantovani

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | ) | No. 4:21 MJ 5142 NAB |
| INFORMATION ASSOCIATED WITH | ) |  |
| **CHIEFJAYJAY** THAT IS STORED AT | ) |  |
| PREMISES CONTROLLED BY | ) |  |
| INSTAGRAM, LLC | ) | FILED UNDER SEAL |
|  | ) |  |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, James Gaddy, a Task Force Officer with the Drug Enforcement Administration, being

first duly sworn by reliable electronic means, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant pursuant to

18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) and Federal Criminal Procedure 41 for

information associated with "**chiefjayjay**" (the "**subject account**") that is stored at premises

owned, maintained, controlled, or operated by Instagram, LLC, ("Instagram") a social-

networking company owned by Facebook, Inc. and headquartered in San Francisco, California.

The information to be searched is described in the following paragraphs and in Attachment A.

The requested warrant would require Instagram to disclose to the United States records and other

information in its possession, including the contents of communications, pertaining to the

subscriber or customer associated with the **subject account** as further described in Attachment

B.

2.      I am a Task Force Officer with the Drug Enforcement Administration (DEA) and

have been since 2010.  I have been a deputized Task Force Officer with the Drug Enforcement

Administration (DEA) since January 2010 and am currently assigned to an Enforcement Group

of the St. Louis Division Office.  Prior to my DEA assignment, I was a sworn police officer with the St. Charles County Police Department and Breckenridge Hills Police Department for approximately 22 years.   During the course of my law enforcement experience I have participated in numerous investigations involving controlled substances.   I have conducted investigations of a variety of illegal drug-trafficking and money-laundering organizations.  I have participated in investigations which led to the seizure of illegal drugs, weapons, and assets derived from the sale of illegal drugs, and the subsequent felony arrests of those individuals involved.  I have participated in numerous drug-related training courses throughout my law enforcement career.   I am familiar with and have used normal methods of investigation, including, but not limited to, visual and electronic surveillance, questioning of witnesses and defendants, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and undercover agents, and the use of court-authorized wire and electronic intercepts.  Through the course of my training and experience, I am familiar with methods employed by narcotics distributors to conduct their business and to subvert law enforcement detection including, but not limited to, the use of multiple communication platforms to compartmentalize their activity.  I am further familiar with how social media has increasingly become a method for both communicating about drug and weapon activity and a vehicle to showcase that activity.  As these social media sites can be accessed from cellular devices, many individuals utilize social media to both brag about their illicit activity and use its messaging services to subvert law enforcement detection.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code (U.S.C.), Sections 924(c), 924(j), and 1111 (use of a firearm in furtherance of a drug trafficking crime or crime of violence resulting in death through murder) and 21 U.S.C. §§ 841(a)(1) and 846 (conspiracy to distribute, conspiracy to possess with intent to distribute, distribution and possession with intent to distribute controlled substances (hereinafter "the subject offenses")) have been committed by **Freeman WHITFIELD IV ("WHITFIELD")**. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## LOCATION TO BE SEARCHED

5.      The location to be searched is:

Instagram Account **"chiefjayjay,"** which is used by **Unidentified Male #1, a/k/a "Chiefjayjay," "Jay Jay"** (hereinafter: **"Chiefjayjay"),** however identified as being a criminal associate to WHITFIELD (hereinafter referred to as "**subject account**") located at 1601 Willow Road, Menlo Park, CA 94025**,** further described in Attachment A. The items to be reviewed and seized by the United States are described in Attachment Part II of Attachment B.

## JURISDICTION

6.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court Eastern District of Missouri is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO INSTAGRAM

7.     The internet is in part a computer communications network using interstate and foreign telephone and communication lines to transmit data streams, including data streams used to provide a means of communication from one computer to another and used to store, transfer and receive data and image files.

8.     An "Internet Protocol" (IP) address is a unique series of numbers, separated by a period, that identifies each computer using, or connected to, the Internet over a network.  An IP address permits a computer (or other digital device) to communicate with other devices via the Internet.  The IP addresses aids in identifying the location of digital devices that are connected to the Internet so that they can be differentiated from other devices.  As a mailing address allows a sender to mail a letter, a remote computer uses an IP address to communicate with other computers.

9.     An "Internet Service Provider" (ISP) is an entity that provides access to the Internet to its subscribers.

10.     The term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

11.     Instagram, LLC is a business and company that operates as a remote computing service, a provider of electronic communications services through ISPs.

12.     From my review of publicly available information provided by Instagram about its service, including Instagram's "Privacy Policy," I am aware of the following about Instagram and about the information collected and retained by Instagram.

13.     Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com.  Instagram allows its users to create

their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

14.     Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user made add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

15.     Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

16.     Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

17.     Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

18.     Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user.

19.     Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

20.     Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

21.     Users on Instagram may also search Instagram for other users or particular types of photos or other content.

22.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

23.     Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

24.     Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

25.     Instagram also collects other data associated with user content. For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

26.     Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

27.     As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs,

shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time.  Further, Instagram account activity can show how and when the account was accessed or used.  For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.   Such  information  allows  investigators  to  understand  the  geographic  and chronological  context  of  Instagram  access,  use,  and  events  relating  to  the  crime  under investigation.   Additionally, Instagram builds geo-location into some of its services.   Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner.  Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation.  For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

28.    Based on the information above, the computers of Instagram are likely to contain all the material described above with respect to the **subject account**, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and

devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## INVESTIGATION AND PROBABLE CAUSE

**A.     Background of Investigation.**

29.     The United States, including the DEA and the St. Louis Metropolitan Police Department (SLMPD), is conducting a criminal investigation of Freeman WHITFIELD IV and others known and unknown regarding the commission of "the subject offenses."

30.     From March of 2018 until October of 2018, DEA investigated a multi-state conspiracy transporting cocaine, heroin, and fentanyl from Houston, Texas and Fort Lauderdale, Florida to the St. Louis area.  The investigation resulted in the seizure of approximately 25 kilograms of cocaine, 10 kilograms of heroin, 3 kilograms of fentanyl, $2,000,000.00 of drug proceeds, and numerous items of value including luxury vehicles and watches.  One of main St. Louis distributors for this organization was Guy Goolsby (Goolsby.)

31.     At the beginning of the investigation and on March 21, 2018, the St. Louis Metropolitan Police Department executed an authorized search warrant for Antonio Boyd's residence at 2522 Palm Street in the City of St. Louis.  Boyd was found to be in possession of approximately, 500 grams of cocaine, some cocaine base, and two firearms.  After his arrest, Boyd agreed to speak with investigators and explained that his family member, Guy Goolsby, was a major drug distributor in St. Louis and was supplying the city with cocaine, heroin, and marijuana.

32.     As the investigation proceeded and in September of 2018, investigators intercepted 10 kilograms of heroin that had been transported from Florida to St. Louis ultimately destined for Goolsby and others.  Following that seizure, investigators were able to develop a

confidential source (CS) who had facilitated the deliveries of controlled substances to Goolsby and others.

33.     Based on the corroborated information from CS, and the numerous seizures in mid-2018, investigators received authorization to intercept multiple cell phones used by Goolsby from October 24, 2018 to March 13, 2019.  During this time several lower-level distributors who were being sourced by Goolsby were identified including Freeman WHITFIELD IV (WHITFIELD.)

34.     In May of 2019, Goolsby, Boyd and thirteen others were indicted in United States District Court – Eastern District of Missouri in a fifteen-person conspiracy for their involvement in a large-scale cocaine, heroin, and fentanyl trafficking ring from Mexico, through Texas and Florida, to the St. Louis area under United States v. Guy Goolsby et al., 4:19-CR-00412 AGF (PLC).  After indictment, Goolsby was detained, and Boyd was released on bond until the case was adjudicated.   After indictment, Boyd agreed to cooperate with the DEA and the United States Attorney's Office in the prosecution of Goolsby and other members of the conspiracy. During a meeting with me and other investigators, Boyd described Goolsby's involvement in drug distribution in detail and identified WHITFIELD and Bryon GREEN (GREEN) as a lower-level distributor and "shooters" for Goolsby' organization.[1]

**B.     Murder of Boyd, Shooting of C.W., and Identification of WHITFILED Use of Predecessor Telephone #1.**

35.     On December 9, 2019, Boyd and another individual, C.W., were outside of Boyd's residence in the front yard at 2522 West Palm in the City of St. Louis in Eastern District

---

[1]     "Shooter" is slang-term for an enforcer for a drug trafficking organization that will use violence and firearms at the direction of the higher-level members of the organization to collect drug debts, attack and/or intimidate potential informants or rival distributors, and protect stashes of drugs or drug proceeds.

of Missouri. WHITFIELD pulled up to the front yard of the residence in silver sedan and fired a .45 caliber firearm at Boyd and C.W multiple times. Boyd was struck and died as a result. C.W. was stuck in the legs and seriously injured. WHITFIELD fled the scene. At least one witness identified WHITFIELD as arriving to and leaving the scene of the shooting in the silver sedan. DEA investigators were contacted by SLMPD homicide who were investigating the case based on Boyd's status as a cooperating defendant in the DEA investigated conspiracy.

36.     During this same time, DEA investigators were investigating what was thought to be an unrelated drug distribution organization involving another St. Louis based drug distributor. At that time, investigators had court-authorization to intercept, monitor, and record that distributor's voice communications from his cellular telephone. On December 10, 2019, the day after the murder/shooting, the other distributor, unaware his calls were being monitored, was intercepted speaking with WHITFIELD's mother, Talisha Nabors. During that call, the distributor offered his assistance to WHITFIELD and asked Nabors to have WHITFIELD contact him. Toll records of Nabors cellular telephone show that immediately after the call with the distributor, Nabors called another number that was later identified as the cellular telephone that WHITFIELD was using before and after the murder/shooting in December of 2019 (hereinafter: predecessor telephone #1.)

37.     On December 12, 2019, WHITFIELD, using predecessor telephone #1, contacted the other distributor. That call was intercepted, monitored, and recorded. During that conversation, the distributor informed WHITFIELD, mistakenly, that a specific witness known to both the distributor and WHITFIELD was present at the shooting and must have seen WHITFIELD shoot Boyd and C.W. WHITFIELD disputed that saying "[h]e…I don't think, I don't even think…he…he wasn't there…dude wasn't there." Upon analysis, the natural

implication of WHITFIELD's denial of a witness' presence at the shooting scene was WHITFIELD was there himself to see that the witness was not present.

38.     Investigators were able to verify the cellular device WHITFIELD used during the above wire intercept (predecessor telephone #1) was the same cellular device WHITFIELD was using prior to the December 9, 2019 shooting of Boyd and C.W. through voice comparisons from numerous recorded jail calls between WHITFIELD and State of Missouri inmates.

39.     On December 18, 2019, DEA investigators applied for and received search warrant for historical cell-site information and other information associated with predecessor telephone #1. On December 19, 2019, I served T-Mobile with the authorized Search and Seizure Warrant for information associated to predecessor telephone #1.   On December 26, 2019, I received the requested data from T-Mobile pertaining to information associated to predecessor telephone #1.   On January 2, 2020, I requested the assistance from the FBI's Cellular Analysis Survey Team to analyze the data received from T-Mobile associated to predecessor telephone #1. All data received from T-Mobile in response to the historical cell-site warrant was forwarded to FBI Cellular Analysis Survey Team for a full exploitation of the information associated with predecessor telephone #1 including which specific cellular tower predecessor telephone #1 was using while transmitting on December 9, 2019.

40.     The FBI's assessment based on which cell tower was being used by predecessor telephone #1 during incoming and outgoing calls on the day of the homicide of Boyd revealed predecessor telephone #1 on December 9, 2019 had initially utilized a cellular tower in the Berkeley, Missouri prior to the shooting.  This indicates predecessor telephone #1 was in the Berkeley, Missouri area prior to the shooting.  A short time before the shooting, predecessor telephone #1 began to utilize a series of cell towers moving away from Berkley, Missouri.  As

the shooting time approached, predecessor telephone #1 switched from cell tower to cell tower in a direct route towards the area of 2500 West Palm Street, St. Louis, Missouri.   Ultimately, predecessor telephone #1 was utilizing the cell tower in the area of 2522 West Palm Street, St. Louis, Missouri at the approximate time of the murder of Boyd and shooting of C.W.  After the shooting, predecessor telephone #1 switched to utilizing other cell towers in a path away from the shooting the location indicating predecessor telephone #1 left the area of the shooting which is consistent with the witness descriptions of the silver sedan leaving the shooting scene.

     **C.**    **Other Identified Predecessor Telephones & Locations Used by WHITFIELD.**

     41.    Shortly after using predecessor telephone #1 to contact the other drug distributor on December 12, 2019, and since January 2020, I have identified and obtained court-authorization to intercept GPS coordinates to five different cellular telephones used by WHITFIELD.  As a result of the GPS coordinates and surveillance, investigators and I have also identified multiple residences and vehicles WHITFIELD have utilized to facilitate his criminal activities.   For example, in March 2020, with the aid of GPS coordinates collected from WHITFIELD's recently identified cellular device and surveillance, investigators were able to locate and solidify WHITFIELD's primary residence as 12388 Tributary, Apartment I, Maryland Heights, Missouri (subject location #1) and 275 Union Boulevard, Apartment 517, St. Louis, Missouri (subjection location #2) used by WHITFIELD as a "stash house."

     **D.**    **Continued Drug Distribution by WHITFIELD.**

     42.    On or about March 11, 2021, investigators and I initiated early morning surveillance at Subject Location #1.  At approximately 8:30 a.m., I observed WHITFIELD exit Subject Location #1 alone carrying a small dog and a "man bag" and/or satchel, which was apparent the "man bag" contained something of substance and/or weight.   I observed

WHITFIELD enter a black in color Chrysler 300 bearing Illinois license plate FP113400. Through law enforcement databases, this vehicle was determined to be registered to Enterprise Rental and was rented by Meagan TYLER (listed utility holder for Subject Location #1). Moments later, the Chrysler 300, being driven and solely occupied by WHITFIELD departed the apartment complex where Subject Location #1 was located.  Investigators, including myself initiated moving surveillance of WHITFIELD operating the Chrysler 300.

43.     Investigators and I followed the Chrysler 300, driven by WHITFIELD a short distance, specifically in the area of Garden Lane at Marine Lane, which is less than a mile from Subject Location #1.  Upon WHITFIELD and the Chrysler 300 reaching this area, investigators, including myself, observed WHITFIELD, still seated in the Chrysler 300 meet with an older model, gold in color Chevrolet Cavalier occupied by a white male and white female. WHITFIELD and the older model Chevrolet Cavalier met with "car-to-car" for a short period of time and depart in separate directions.[2]   Within seconds of WHITFIELD meeting "car-to-car" with the older Chevrolet Cavalier, WHITFIELD met with another vehicle "car-to-car", a black Ford F-150, with unknown Illinois plates and occupied by a white male.  Again, WHITFIELD and the black in color F-150 met for a short period of time and departed in separate directions.  Both of these interactions were consistent with street-level drug sales.

44.     Following the departure between WHITFIELD and the black Ford F-150, investigators and I observed WHITFIELD depart the immediate area.  Investigators followed

---

[2]     "Car to Car" is two vehicles pulling up to each other so the driver's side windows are facing each other close enough for the drivers to exchange physical items.  This allows for drugs, money or other contraband, to be quickly traded by the drivers in a fashion that is reasonably concealed from the view of any surveilling law enforcement.  I know from training and experience that this tactic is often used by street-level drug distributors to conduct drug exchanges quickly and efficiently.

WHITFIELD directly to Subject Location #2. Once WHITFIELD arrived and parked the Chrysler 300, WHITFIELD exited and entered the building where Subject Location #2 is located. Again, I observed WHITFIELD carrying the "man bag" and the small dog.

45.    On April 2, 2021, geo-location data collected from WHITFIELD's present cellular device placed WHITFIELD at Subject Location #1. At approximately 8:20 a.m., investigators, including co-case agent TFO Joseph Somogye, observed WHITFIELD exit Subject Location #1, carrying a man-bag and walk to a silver Chrysler 300. Investigators followed WHITFIELD directly to Subject Location #2. As described throughout the instant affidavit, Subject Location #2 was known to investigators and myself as being WHITFIELD's daytime drug operation location and/or "stash house." Investigators, on a daily basis have witnessed WHITFIELD arrive at Subject Location #2 and then depart for short periods of time in order to conduct car-to-car drug transactions at various times throughout the day.

46.    At approximately 9:40 a.m., investigators, including co-case agents TFO Somogye and TFO Tom Scanlon, observed WHITFIELD exit Subject Location #2 carrying a "man bag". Investigators observed WHITFIELD enter a silver Chrysler 300, bearing Texas license plate MCY8681. This vehicle had been determined to be a rental vehicle, which was very common for WHITFIELD to utilize constantly changing rental vehicles to attempt to thwart law enforcement's investigation.

47.    Investigators followed WHITFIELD to an industrial area located at or near the intersection of Sarpy at Gratiot in the City of St. Louis. Since the commencement of my investigation into WHITFIELD, this particular area was common for WHITFIELD to frequent to conduct street-level drug transactions. It is believed that this area was used because of investigators' difficulty to conduct nearby or intimate surveillance without being spotted by

WHITFIELD. However, investigators were able to conduct a "drive-by" surveillance on Sarpy at Gratiot to confirm WHITFIELD's actions. TFO Joseph Somgoye observed several vehicles lined up along Sarpy before Gratiot. Those vehicles were all occupied and were stationary. Based on WHITFIELD's common method of how he distributes his heroin and/or fentanyl, investigators believed the cars were lined up awaiting for WHITFIELD to provide them heroin and/or fentanyl in a rapid and collective method. Moments later, TFO Tom Scanlon observed the silver Chrysler 300, being driven by WHITFIELD turn onto Sarpy. A few seconds later, TFO Scanlon pulled onto Sarpy and immediately observed WHITFIELD meeting with the cars that were lined up. To avoid compromising the investigation, TFO Scanlon was forced to continue to drive by. However, it appears that WHITFIELD observed TFO Scanlon driving by which caused WHITFIELD to drive away in an unsafe and erratic behavior and failing to supply all the waiting customers. Once WHITFIELD fled the area, the cars that were initially lined up also departed Sarpy simultaneously.

48.     Continuing to monitor geo-location of WHITFIELD, investigators noticed WHITFIELD to be present in the Soulard Neighborhood in the City of St. Louis. Just as Sarpy and Gratiot area, the Soulard neighborhood in the City of St. Louis was also a common location for WHITFIELD to distribute his heroin and/or fentanyl.

49.     At approximately 10:50 a.m., investigators, including co-case agents TFO Somogye and TFO Scanlon, observed the Chrysler 300 being driven by WHITFIELD in the area of Broadway at 7th Street, in the Soulard neighborhood. For the next 30 to 45 minutes, investigators observed WHITFIELD meet with numerous vehicles car-to-car for short periods of time. Again, to avoid compromising the investigation and/or alerting WHITFIELD of law enforcement presence, investigators maintained distance from WHITFIELD.

50.     Investigators then observed WHITFIELD proceed out of the Soulard neighborhood and enter westbound Interstate 44.  Monitoring geo-location data from the subject cellular telephone, WHITFIELD again returned back to the Gratiot and Vanderventer area in the City of St. Louis.  Just as before, investigators observed WHITFIELD met car-to-car with several vehicles in the immediately area before returning back to Subject Location #2.

**E.     May 4, 2021 Execution of Federal Search Warrant & Arrest Warrant.**

51.     On April 28, 2021 the Honorable Patricia L. Cohen, United States Magistrate Judge, Eastern District of Missouri, issued a Search and Seizure Warrant for subject locations #1 and #2 (Cause No. 4:21-MJ-6074 PLC and 4:21-MJ-6075 PLC.)  On May 3, 2021, the Honorable John M. Bodenhausen, United States Magistrate Judge, Eastern District of Missouri, issued a Federal Criminal Complaint for WHITFIELD (4:21-MJ-1169 JMB) for the following offenses: count 1) conspiracy to distribute fentanyl, fentanyl analogues, and heroin under 21 U.S.C. §841(a)(1) and §846; count 2) discharge of a firearm in furtherance of a drug trafficking crime that caused the death of a person through murder under  21 U.S.C. §924(c), §924(j), and §1111); and count 3) discharge of a firearm in furtherance of a drug trafficking crime under 21 U.S.C. §924(c).

52.     During the early morning hours of May 4, 2021, DEA investigators, with the assistance from members of the SLMPD Intelligence Division executed simultaneous search warrants at subject locations #1 and #2.  WHITFIELD was arrested without incident at subject location #1, while no person(s) were located and/or arrested at subject location #2.  As a result of investigators authorized search of the premises (subject locations #1 and #2), investigators and I seized the following: approximately 1,217 grams of fentanyl, an Alien Armory Model 15 AR-style firearm, Mini Draco AK-style firearm, F&N 5.7x28mm firearm, Delton .556mm firearm

AR-style firearm, Glock 20 10mm firearm, a Ballistic Vest with two Level III grade ballistic plates, approximately 3500 rounds of various ammunition including 45 ACP, electronic surveillance equipment (a bug detector, handheld radios, a police scanner), multiple high-capacity magazines including two "drum" magazines, multiple firearm attachments (lights & lasers), three digital scales, large undetermined amount of United States currency, and nine cellular devices (target devices 1-9), including WHITFIELD's current cellular device, one of which investigators were acquiring GPS coordinates from.[3]

**F.    WHITFIELD'S Jail Calls from St. Charles County Jail and Identification of Instagram Account "chiefjayjay."**

53.    Following WHITFIELD's arrest on May 4, 2021, WHITFIELD was transported to the St. Charles County – Department of Corrections and remanded to jail personnel awaiting his initial appearance before an Eastern District of Missouri Magistrate Judge.  Concerned with the potential destruction of evidence and/or witness tampering, I requested and obtained any and/or all recorded jail conversations between WHITFIELD and others while WHITFIELD was incarcerated at the St. Charles County –Department of Corrections.[4]

---

[3]    On May 7, 2021, the Honorable John M. Bodenhausen, United States Magistrate Judge, Eastern District of Missouri, issued a Search and Seizure Warrant for target devices 1-9, which were seized during the execution of a Federal Search Warrant for subject locations #1 & #2 (Cause No. 4:21 MJ-1211 JMB).  Week of May 10, 2021, target devices 1-9 will be submitted to the SLMPD Cyber Crime Unit to be exploited and analyzed relative to its contents.

[4]    On the morning of May 7, 2021, I was transporting WHITFIELD to the Thomas Eagleton Building – United States Courthouse to be turned over to the United States Marshal Service and for WHITIFIELD's initial appearance.  While traveling to the courthouse, WHITFIELD asked me again to provide his charges.  After reading his charges to WHITFIELD, WHITFIELD asked, "I can only be charged with murder if there is an eyewitness, right?"  Based on WHIFIELD indicated earlier desire to speak to a lawyer, I did not ask WHITFIELD anything about that question.  However, that question from WHITFIELD caused me great concern knowing the suspected motive for the killing of Boyd was to silence a law enforcement cooperator and that there are still eyewitnesses to the murder of Boyd on December 9, 2019.  Furthermore, knowing WHITFIELD and his associates, like GREEN,

54.     On the afternoon of May 7, 2021, I received audio files containing recorded jail conversations between WHITFIELD and others.  During majority of the jail calls, WHITFIELD would direct the other party to communicate through an Instagram page named "**chiefjayjay**" (**subject account**) and used and/or monitored by "**Chiefjayjay**" in order to get "Big Cuz" and "B" together.  As summarized above in the instant affidavit, we are aware that Bryon GREEN is "B" and he is a close criminal associate of WHITFIELD see with WHITFIELD on numerous occasions over the last two years.  At this point in the investigation, "Big Cuz" is still unidentified.

55.     On May 4, 2021 at approximately 1:58 p.m., on WHITFIELD's first recorded jail call, WHITFIELD called Missouri-based telephone number (636) 317-8828, used by Aria Tyler (Brett).  Aria Tyler (Brett) was previously identified as being the paramour and mother to WHITFIELD's unborn son.  During this recorded conversation, WHITFIELD says, "On Instagram...**Chiefjay**, that's his (**"Chiefjayjay"**) name on Instagram."  "Tell him (**"Chiefjayjay"**) I (WHITFIELD) said to get "Cuz" up (meet) with "B" (GREEN)...I (WHITFIELD) don't know...they (law enforcement) got me (arrested)."  Aria Tyler (Brett) replied, "You said **Chiefjay**?"  WHITFIELD says, "**chiefjayjay**" on Instagram (**subject account**)."  "Tell him I (WHITFIELD) need to talk to him ("**Chiefjayjay**") and to get "Big Cuz" up (meet) with "B" (GREEN)."  WHITFIELD continued "and what else...when you talk to my Uncle Demetrius to get that money out the account (empty WHITFIELD's banking accounts to avoid possible law enforcement seizure)."

---

have violent tendencies, I believe that WHITFIELD was considering ways to avoid prosecution for his involvement in Boyd's murder that could include tampering and/or harming those witnesses.

56.     Investigators and I believe the above call consisted of WHITFIELD giving orders to Aria Tyler (Brett) to first get ahold of "Big Cuz" and GREEN through **subject account** in order for "Big Cuz" and GREEN to dispose of any evidence that could implicate WHITFIELD in any criminal matters including the December 9, 2019 murder and WHITFIELD's continued drug distribution up until his arrest on May 4, 2021.  Based on this call it seems apparent that WHITFIELD has communicated with **"Chiefjayjay"** with the Instagram account entitled **"chiefjayjay"** (the **subject account**) in the past.  Based on the coded content of the discussions WHITFIELD is attempting to pass along through Aria Tyler (Brett) including the possible destruction or concealment of evidence, the reasonable inference exists that the **subject account** and the **"Chiefjayjay,"** who uses and/or monitors the **subject account** are part of the inner-circle of WHITFIELD's, GREEN's and "Big Cuz's" drug distribution conspiracy.  Furthermore, WHITFIELD instructed Aria Tyler (Brett) to tell WHITFIELD's Uncle Demetrius to withdraw all the money from the account.  This is evidence WHITFIELD is limiting his avoiding further financial loss knowing law enforcement capabilities to exploit identified banking accounts used by drug traffickers, and seized monies derived from criminal activity.

57.     On May 4, 2021, at approximately 2:04 p.m., WHITFIELD placed an outgoing recorded jail call to Missouri-based telephone number (314) 755-2017, used by Charlene Bratton (Bratton).  Bratton has been identified through surveillance and WHITFIELD's statement to me on May 4, 2021 that Bratton is WHITFIELD's other paramour, who he referred to as his "side gal."  During the recorded call, WHITFIELD stated, "Man...they (law enforcement) kicked in (executed warrants) my little houses (subject locations #1 & #2)...but what do I need you (Bratton) to do?...**Chief** um...his name is **"chiefjayjay"** on Instagram (the **subject account**)...tell him (**"Chiefjayjay"**)...try and talk to him (**"Chiefjayjay"**) in person or

whatever, but get "B" (GREEN) up with "Big Cuz"...shit put them ("Big Cuz" & GREEN) on game (alert)...tell them they (law enforcement) don't got nothing (evidence) on "B" (GREEN) or nothing...they (law enforcement) asking crazy ass questions, like whole bunch of bullshit." Bratton replied, "They (law enforcement) messed up my day too."  WHITFIELD stated, "Oh yeah, you can send all that stuff (suspected drugs) back cause I'm gonna need that damn money and the other little stuff (suspected drugs)...I don't know...you can do whatever."

58.    Investigators and I believe the above recorded jail conversation again consisted of WHITFIELD directing a second person (Bratton) to reach out to "Big Cuz" and GREEN through "**Chiefjayjay**" and/or the **subject account** in order to alert GREEN of the current situation and/or eliminate any person(s) or things that can implicate WHITFIELD surrounding the murder on December 9, 2019 and his on-going drug trafficking.  Furthermore, investigators and I believe making contact with "Big Cuz" and GREEN through the **subject account** and "**Chiefjayjay**" is of the utmost importance to WHITFIELD since Bratton is the second person WHITFIELD had directed to perform this task.  Again,  investigators and I believe if WHITFIELD only wished to communicate with "Big Cuz" and/or GREEN about legal activities, WHITFIELD would have either spoke freely to Bratton about what he wanted Big Cuz" and GREEN to do, or WHITFIELD would have called "Big Cuz" and GREEN directly from the St. Charles County Jail.  Therefore, it appears that the "**Chiefjayjay**" who uses and/or monitors the **subject account** is a trusted member of WHITFIELD's, GREEN's, and "Big Cuz's" drug distribution conspiracy.

59.    On May 4, 2021, at approximately 2:10 p.m., WHITFIELD placed an outgoing recorded jail call to Missouri-based telephone number (314) 295-1280, used by Unidentified

Male #2 associated with WHITFIELD (UM#2).[5]  During the recorded call, WHITFIELD stated, "Man brah...they (law enforcement) kicked in all the little houses and shit brah...they (law enforcement) talking about old shit on some shit...some 18 (2018) shit you hear me?...But tell "B" (GREEN) though...I said that they (law enforcement)...they don't...but they (law enforcement) 'on it' (investigating the December 9, 2019 homicide) but they (law enforcement) not 'on it' (law enforcement does not have all the details about the homicide), you see what I'm saying?...but what they (law enforcement) got today...guns and shit (the five firearms and kg. of fentanyl seized form WHITFIELD's residences on May 4, 2021)...but mutherfuckers (law enforcement) are hot (aware of WHITFIELD's criminal behavior and/or successful at interdicting and seizing WHITFIELD's illegal items).  Further in the conversation, WHITFIELD stated, "They (law enforcement) was talking about that other shit too...that shit over on 'the trees' (2522 Palm Street was the location of homicide)...but like I said brah it ain't like...they (law enforcement) ain't got nothing (evidence) I can say...they heard something out on the streets."  Investigators and I believe the conversation consisted of WHITFIELD again reaching out to someone, in his case UM#2, to contact GREEN and inform GREEN WHITFIELD believes that law enforcement does not have enough to establish WHITFIELD (or GREEN) was involved in the homicide.  WHITFIELD continued, using coded language, to confide with UM#2 about law enforcement seizing the guns and drugs from WHITFIELD's two residences on May 4, 2021.  Additionally, WHITFIELD, continuing to use coded language, began to discuss with UM#2 the December 9, 2019 homicide when WHITFIELD stated, "that shit over 'on the trees',"

---

[5]      Through law enforcement database, the subscriber for Missouri-based telephone number (314) 295-1280 is listed as Arnold Britt.  Further searching into the identity of Arnold Britt listed a past address of 2613 Palm, St. Louis, Missouri, which is also a listed address that WHITFIELD has used in the past.  To date, investigators and I have yet to positively identify the user (UM#2) of Missouri-based telephone number (314) 295-1280.

which makes little sense unless it is referring to the location of the homicide on 2522 Palm Street with Palm Street being "the trees."

### G.    Covert Review of Subject Account's Public Information.

60.    After listening to the above described recorded jail calls, I used an undercover Instagram account and searched the Instagram name "**chiefjayjay**" (**subject account**).[6] Although the account is "private" and/or restricted, which does not allow me or the general user to view the content, I was able to determine the **subject account** and my undercover account have five of the same followers.  Of those five followers, I was aware that Instagram account named "vitolonglive" and "beamgates" are directly associated with WHITFIELD and GREEN. The Instagram account "vitolonglive" is a memorial account for a deceased friend of WHITFIELD and GREEN who was shot and killed.  The Instagram account "beamgates" was used by Guy GOOLSBY to communicate with others while incarcerated at the St. Charles County – Department of Corrections.  Guy GOOLSBY was found in possession of cellular devices on two separate occasions while his Federal Drug Conspiracy case was being adjudicated.  On July 23, 2020, the Honorable John M. Bodenhausen, United States Magistrate Judge, Eastern District of Missouri, issued a Search and Seizure Warrant for the Instagram account "beamgates" (Cause No. 4:20 MJ-1155 JMB).   Through the exploitation of the

---

[6]    In order to create a "undercover" Instagram account, I established an account using a fictitious name, email, and screen name to allow me and other investigators to view the public portions of social media accounts without being detected as law enforcement.  Based on my knowledge that those involved in illegal activity utilize various social media outlets to facilitate those illegal activities, such as Instagram, I use my "undercover" account to view the public portions of the accounts of those believed to be involved in illegal activities.  The intelligence gathered as a result of viewing these public portions of accounts are valuable to an investigation based on investigators ability to view publicly posted photographs, identify publicly listed associates, and other useful intelligence.  With regards to the instant investigation, I used my "undercover" account to locate and view the public portions of the **subject account** and identify publicly listed followers between the **subject account** and my "undercover" account.

Instagram account "beamgates", investigators were able to verify Guy GOOLSBY utilized the Instagram account while incarcerated.

**H.    WHITFIELD'S Jail Calls from St. Genevieve County Jail.**

61.    On May 7 , 2021, after WHITFIELD's initial appearance in United States Magistrate Court on the May 3, 2021 complaint, the United States Marshall Service (USMS) transferred WHITFIELD to St. Genevieve County Jail awaiting the court's ruling on his pre-trial detention.  Once WHITFIELD arrived, I requested to be provided any and all jail calls that WHITFIELD would make from that jail.  Since his delivery, WHITFIELD has called Aria Tyler (Brett), Bratton, and others.  On May 7, 2021, at approximately 4:35pm, WHITFIELD contacted Aria Tyler (Brett) and stated "I need to talk to **Jayjay.**"  WHITFIELD further stated he would call Tyler (Brett) about going over funds for the canteen at the Jail and stated at the end of the conversation "I am going to have you call that n****r, "**Jayjay.**"

62.    Based on WHITFIELD's request to contact and speak with "**Jayjay,**" investigators and I believe that "**Jayjay**" is the "**Chiefjajay**" WHITFIELD was referring to at St. Charles County Jail and is the holder of the **subject account**.  Also, again, based on WHITFIELD's failure to explain to Aria Tyler (Brett) what he needs to speak to "**Jayjay**" about, I believe that WHITFIELD is attempting to reach out to a trusted criminal associate, "**Jayjay**" ("**Chiefjayjay.**")

**I.    Reasons for Request.**

63.    I am now seeking authorization for a search warrant for Instagram account "chiefjayjay" (**subject account**) to identify "**Chiefjayjay**" and to identify if there is any discussion and/or evidence of trying to harm a witness to the homicide/shooting on December 9, 2019 and/or any evidence of the homicide itself.  Also, investigators believe there will be

discussions in relation to the homicide/shooting on December 9, 2019 and/or will have evidence of WHITFIELD's drug trafficking activities from early 2019 to the present. I know from training and experience that individuals involved in criminal activity, including drug distribution or the enforcement of drug distribution operations, communicate through social media such as Instagram messenger based on their belief law enforcement seldom monitor and/or track social media communications. Investigators and I believe this sense of security by those involved in illegal activity, such as WHITFIELD and GREEN, allow them to feel more secure and communicate freely through social media outlet, in this case Instagram. Further, I am confident investigators will also locate evidence of WHITFIELD's drug distribution network, not only to provide additional intelligence of his involvement but to help identify others unknown to the investigative team on the **subject account**.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

60.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Instagram to disclose to the United States copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, United States-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

61.     Based on the forgoing, I request that the Court issue the proposed search warrant. The United States will execute this warrant by serving the warrant on Instagram. Because the warrant will be served on Instagram, who will then compile the requested records at a time

convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

62.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

63.     I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.   Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

**I state under the penalty of perjury that the foregoing is true and correct.**

Respectfully submitted,

James Gaddy
Task Force Officer
Drug Enforcement Administration (DEA)

**Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 this 12th day of May, 2021**

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the Instagram profile with username:

**chiefjayjay**

that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a company that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

### I.  Information to be disclosed by Instagram, LLC

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, LLC, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram, LLC is required to disclose the following information, from June 1, 2019 to present, to the government for each account listed in Attachment A:

a.  All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

b.  All past and current usernames associated with the account;

c.  The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d.  All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;

e.  All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

f.  All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

g.  All communications or other messages sent or received by the account;

h.  All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other;

i.  All photographs and images in the user gallery for the account;

j.  All location data associated with the account, including geotags;

k.  All data and information that has been deleted by the user;

l.    A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

m.    A list of all users that the account has "unfollowed" or blocked;

n.    All privacy and account settings;

o.    All records of searches performed by the account, including all past searches saved by the account;

p.    All information about connections between the account and third-party websites and applications; and,

q.    All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

**Instagram, LLC is hereby ordered to disclose the above information to the United States within 14 days of the date of this warrant.**

**II.    Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations Title 18, United States Code, Sections 924(c), 924(j), and 1111 (use of a firearm in furtherance of a drug trafficking crime or crime of violence resulting in death through murder) and Title 21 United States Code, Sections 841(a) and 846 involving **Freeman WHITFIELD IV** from January 1, 2019 to present, including, for each username identified on Attachment A, information pertaining to the following matters:

(a) the procurement, delivery, distribution, sale, transportation, or other actions involving illegal drugs, any and all communications between WHITFIELD, GREEN, "Big Cuz", **"Chiefjayjay,"** and other conspirators known and unknown, any other preparatory steps taken in furtherance of the conspiracy, actions to enforce or to protect the conspiracy, and the concealment of the conspiracy or its actions from law enforcement.

(b) Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner;

(c) Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the user ID about matters relating to drug distribution or the enforcement and/or protection of that distribution, including records that help reveal their whereabouts.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Instagram, LLC, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Instagram, LLC. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Instagram, LLC, and they were made by Instagram, LLC as a regular practice; and

b.      such records were generated by Instagram, LLC's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Instagram, LLC in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Instagram, LLC, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                                     Signature